1

2

3

4

5

6

7

8                          IN THE UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10    GARRETT MORGAN CRANE,

11              Petitioner,                          No. CIV S-09-983 MCE CHS

12        vs.

13    DOMINGO URIBE, JR., Warden,

14              Respondent.

15                                        FINDINGS AND RECOMMENDATIONS

16    _____/

17                                  I.  INTRODUCTION

18              Crane, a state prisoner, proceeds pro se with a first amended petition for writ of

19    habeas corpus pursuant to 28 U.S.C. § 2254.  At issue are his 2005 convictions for receiving

20    stolen property and resisting a peace officer in the Siskiyou County Superior Court, case number

21    05-438, for which he was sentenced to seven years in prison.

22                         II.  FACTUAL AND PROCEDURAL BACKGROUND

23              Late in the evening on February 23, 2005, Crane went to the home of his friend,

24    Kristopher Day, and borrowed Day's van.  When Crane returned in the van the next morning it

25    was full of boxes of computers and computer-related equipment.  Crane told Day he had broken

26    into Computer Concepts and taken the equipment.  Day kept a few of the items and then helped

1

Crane move the rest of the equipment to a storage unit.[1]

The Yreka Police Department responded to the burglary at Computer Concepts and observed a broken padlock on the exterior of the store and an open door. The inside of the store appeared to have been ransacked. Police took photographs and collected footprints.

On March 3, at approximately 11:00 p.m., Patrol Deputy Mack Mcdonald of the Siskiyou County Sheriff's Department observed a car parked at the Budget Storage in Montague. McDonald saw Crane, whom he recognized, and a female standing in front of a vehicle parked next to an open storage unit; he noticed that they saw him and thought they were behaving strangely. Inside the open storage unit were a large quantity of computer-related equipment and blank business checks stolen from Computer Concepts. McDonald and an assisting sergeant detained Crane and McLain.

Crane was arrested on suspicion of receiving stolen property and transported to the Siskiyou County Jail. He had a camera attached to his belt which was later determined to have been stolen from Computer Concepts. Once inside the receiving area of the jail, Crane refused to comply with requests by two correctional employees.

A jury convicted Crane of receiving stolen property and two misdemeanor counts of resisting a peace officer (one for each correctional employee involved). The jury also found true for sentence enhancement purposes that he had incurred numerous prior felony convictions. The trial court sentenced him to an aggregate term of seven years in prison.

Crane appealed his convictions to the California Court of Appeal, Third District, where judgment was affirmed in an unpublished opinion. *People v. Crane*, No. C050495, 2007 WL 1053506 (Cal. Ct. App. 3rd Dist. April 10, 2007). The California Supreme Court granted a petition for review but ultimately dismissed the matter. Crane sought habeas corpus relief in

---

[1] Day pleaded guilty to receiving stolen property in a plea bargain pursuant to which he was to be sentenced to five years in state prison. Although not required by the terms of his plea bargain, he testified against Crane at Crane's trial and admitted prior convictions for burglary, auto burglary, and embezzlement.

1    state court which was likewise denied.

2                           III.  GROUNDS FOR RELIEF

3         In his first amended federal petition, Crane claims (A) the trial court failed to

4 instruct the jury with the definition of great bodily injury; and (B) the prosecutor knowingly used

5 perjured testimony in violation of the rule of *Napue v. Illinois*, 360 U.S. 264 (1959).

6             IV.  APPLICABLE LAW FOR FEDERAL HABEAS CORPUS

7         An application for writ of habeas corpus by a person in custody under judgment of

8 a state court can be granted only for violations of the Constitution or laws of the United States.

9 28 U.S.C. §2254(a); *see also Peltier v. Wright*, 15 F.3d 860, 861 (9th Cir. 1993); *Middleton v.*

10 *Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing *Engle v. Isaac*, 456 U.S. 107, 119 (1982)).

11 This petition for writ of habeas corpus was filed after the effective date of, and thus is subject to,

12 the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  *Lindh v. Murphy*, 521

13 U.S. 320, 326 (1997); see also *Weaver v. Thompson*, 197 F.3d 359 (9th Cir. 1999).  Under the

14 AEDPA, federal habeas corpus relief is also precluded for any claim decided on the merits in

15 state court proceedings unless the state court's adjudication of the claim:

16
17                 (1) resulted in a decision that was contrary to, or involved an
                unreasonable application of, clearly established Federal law, as
                determined by the Supreme Court of the United States; or

18
19                 (2) resulted in a decision that was based on an unreasonable
                determination of the facts in light of the evidence presented in the
                State court proceeding.

20 28 U.S.C. § 2254(d); see also *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Williams v.*

21 *Taylor*, 529 U.S. 362, 402-03 (2000); *Lockhart v. Terhune*, 250 F.3d 1223, 1229 (9th Cir. 2001).

22         This court looks to the last reasoned state court decision to determine whether the

23 law applied to a particular claim by the state courts was contrary to the law set forth in the cases

24 of the United States Supreme Court or whether an unreasonable application of such law has

25 occurred.  *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002), cert. dismissed, 538 U.S. 919.  The

26 state court's factual findings are presumed correct if not rebutted with clear and convincing

1   evidence.  28 U.S.C. § 2254(e)(1); *Taylor v. Maddox*, 336 F.3d 992, 1000 (9th Cir. 2004).  It is

2   the habeas corpus petitioner's burden to show the state court's decision was either contrary to or

3   an unreasonable application of federal law.  *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002).

4                                          V.  DISCUSSION

5          A.       Omitted Instruction Defining Great Bodily Injury

6                  For sentence enhancement purposes, the information charged Crane with having

7   incurred a prior felony conviction, a violation of section 4501 of the California Penal Code,

8   under which it is a felony for a "person confined in a state prison" to commit "an assault upon the

9   person of another with a deadly weapon or instrument, or by any means of force likely to produce

10  great bodily injury."  This prior "strike" conviction supported the doubling of Crane's term for

11  receiving stolen property if it was based on his personal use of "a dangerous or deadly weapon."

12  *See* Cal. Penal Code §§ 1170.12 (b)(1), (c); 1192.7(c)(23).

13                 Following the guilt phase of trial, in a bifurcated proceeding on the prior

14  conviction before the jury, the prosecutor presented evidence that Crane had been convicted of a

15  violation of section 4501 based on an incident in which he used a blow gun to shoot a blow dart

16  at two correctional officers.  The trial court instructed the jury that "[a] deadly or dangerous

17  weapon means any weapon, instrument, or object that is capable of being used to inflict great

18  bodily injury or death."  The court did not instruct on the meaning of the term "great bodily

19  injury."  Crane claims this omission constituted an unconstitutional failure to instruct on an

20  element of the offense.

21                 The California Court of Appeal rejected the claim on state habeas corpus, holding:

22         [T]his court rejected an identical argument more than 20 years ago
           in *People v. Kimbrel* (1981) 120 Cal.App.3d 869, concluding that
23         ... given "the long acceptance of 'great bodily injury' as a term
           commonly understandable to jurors ... it has not acquired a
24         technical legal definition requiring in the absence of special
           circumstances a clarifying instruction." (*Id.* at pp. 873, 876.)
25

26  *People v. Crane*, No. C050495, 2007 WL 1053506, *supra*, at 3.

                                               4

A claim of instructional error does not raise a cognizable federal claim unless the error, considered in context of all the instructions and the trial record as a whole, "so infected the entire trial that the resulting conviction violates due process." *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991); *Henderson v. Kibbe,* 431 U.S. 145, 152-55, n.10 (1977); *Cupp v. Nauhten,* 414 U.S. 141, 146-47 (1973).  In addition, on federal habeas corpus review, no relief can be granted without a showing that the instructional error had a "substantial and injurious effect or influence in determining the jury's verdict." *Calderon v. Coleman*, 525 U.S. 141, 147 (1998) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).  An alleged error such as an omitted instruction, as the case is here, is less likely to be prejudicial than a misstatement of the law. *Kibbe*, 431 U.S. at 155; *Clark v. Brown*, 450 F.3d 898, 904 (9th Cir. 2006).

Whether a term in a jury instruction requires definition depends on whether the term expresses a concept within the jury's ordinary experience.  *United States v. Tirouda*, 394 F.3d 683, 689 (9th Cir. 2005).  No error results from a failure to define a concept that is "within the comprehension of the average juror." *Id*. (holding that no error resulted from failure to define "accomplice").

California law defines "great bodily injury" as "a significant or substantial physical injury." *See* Cal. Penal Code § 12022.7(f).  Contrary to Crane's arguments, neither the fact that the state legislature has defined the term, nor the fact that it has been the subject of previous litigation demonstrates that it has a meaning peculiar to the law that is not commonly understood by those familiar with the English language.  The state court reasonably determined that the meaning of "great bodily injury" is within comprehension of the average juror.  There was no due process violation.

B      Alleged Perjured Testimony

Crane claims the prosecutor knowingly presented the perjured testimony of witness Kristopher Day in violation of the rule of *Napue v. Illinois*, 360 U.S. 264 (1959).  Respondent contends this claim is procedurally barred.  Nevertheless, it is recommended that this

1   court reach the merits of the claim.  *See Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)

2   (holding that for reasons of judicial economy an appellate court may pass on deciding

3   complicated procedural bar issues when a petition is "easily resolvable against the habeas

4   petitioner" on other grounds); *Franklin v. Johnson*, 290 F.3d 1223, 1232 (9th Cir. 2002)

5   ("[A]ppeals courts are empowered to, and in some cases should, reach the merits of habeas

6   petitions if they are, on their face and without regard to any facts that could be developed below,

7   clearly not meritorious despite an asserted procedural bar.").

8          It is well settled that a conviction obtained using knowingly perjured testimony

9   violates due process (*Mooney v. Holohan*, 294 U.S. 103, 112 (1935)), and "must be set aside if

10   there is any reasonable likelihood that the false testimony could have affected the jury's verdict."

11   *United States v. Bagley*, 473 U.S. 667, 680 n.9 (1985); *Morales v. Woodford*, 388 F.3d 1159,

12   1179 (9th Cir. 2004) ("The due process requirement voids a conviction where the false evidence

13   is 'known to be such by representatives of the State.'") (quoting *Napue v. Illinois*, 360 U.S. 264,

14   269 (1959)).  Relief based on the introduction of perjured testimony at trial is available only if

15   the testimony was actually false.  *Jackson v. Brown*, 513 F.3d 1057, 1071 (9th Cir. 2008).  In

16   addition, the prosecution must have actually known or should have known that the testimony was

17   false.  *Id*.; s*ee also Morales*, 336 F.3d at 1151-52 ("The essence of the due process violation is

18   misconduct by the government, not merely perjury by a witness.") (citing *Napue*, 360 U.S. at

19   491-92) (overruled on other grounds).  In sum, if the prosecution used perjured testimony that the

20   prosecutor knew or should have known was false, and the testimony is material, that is,

21   reasonably likely to have affected the verdict, the conviction must be reversed.  *See United States*

22   *v. Agurs*, 427 U.S. 97, 103 (1976); *Jackson*, 513 F.3d at 1075-76.

23          Here, Crane asserts Day falsely testified that Day did not enter Computer

24   Concepts on February 23, 2005, the day of the burglary.  In support of the claim of knowing

25   presentation of perjured testimony, Crane has produced a police report and supplemental police

26   report in which Officer Berwick compared the sole pattern of Day's boots with a sole pattern

1    impression lifted from the crime scene.  (First Amended Petition, Ex. A-1, A-2.)  Berwick

2    concluded the two patterns looked the same and were similar in length and wear.

3              This evidence does nothing to establish the falsity of Day's testimony.  No

4    evidence establishes when the shoe prints at issue were made; there is no indication they were

5    left on the day of the burglary.  Day testified he had been to Computer Concepts three or four

6    times and that he knew the owner "quite well."  (Reporter's Transcript ("RT") at 254-55.)  If the

7    shoe prints belonged to Day he could have left them on one of his prior visits.  The cited police

8    report does not demonstrate Day testified falsely as to this matter.

9              Crane also contends Day lied when he testified that he was not given a deal from

10   the prosecutor who prosecuted both of their cases.  Day testified that he had entered into a plea

11   agreement under which he was to be sentenced to five years in prison for his participation in the

12   offense.  His sentencing date was scheduled for November 9 [2005], which was after Crane's

13   trial concluded.  (RT at 248.)  Crane contends that because Day was ultimately sentenced to a

14   term of only two years, Day must have lied about not receiving any benefit for his testimony

15   against Crane.

16             Crane also alleges that Day "fled from justice" on July 14, 2005.  Exhibits

17   attached to the first amended petition purport to show that he failed to appear on November 9,

18   2005 for sentencing and in fact did not make any appearances in his case until 2010, at which

19   time he was sentenced to the lesser two year term.  These circumstances, if true, have no bearing

20   on the truthfulness of his testimony at Crane's trial.  There is no evidence that Day gave perjured

21   testimony regarding his plea agreement.

22             Even assuming, solely for the sake of argument, that some of Day's testimony was

23   false, Crane still fails to demonstrate the perjured testimony was knowingly presented by the

24   government.  There is no evidence that the prosecutor knew whether Day would testify truthfully.

25   *See United States v. Olano*, 62 F.3d 1180, 1197 (9th Cir. 1995) ("[A] prosecutor can never

26   guarantee that a witness will not commit perjury.  Her duty is to refrain from knowingly

                                                  7

presenting perjured testimony and from knowingly failing to disclose that testimony used to convict a defendant was false." (citing *United States v. Aichele*, 941 F.2d 761, 766 (9th Cir. 1991)).  During closing arguments, the prosecutor argued as to Day's testimony, "He's a thief, and maybe he did the burglary, and all that."  (RT at 630.)  Contrary to Crane's argument, this statement does not demonstrate that the prosecutor knew the falsity of Day's testimony.  Rather the prosecutor appeared to recognize and highlight for the jury that Day's credibility was at issue and that he might or might not have been truthful in his testimony about who committed the burglary.

Crane additionally fails to demonstrate the Day's testimony was material because it did not assist the government in obtaining his conviction.  *See United States v. Houston*, 648 F.3d 806, 814 (9th Cir. 2011) ("In assessing materiality under *Napue*, we determine whether there is any reasonable likelihood that the false testimony could have affected the judgment of the jury; if so, then the conviction must be set aside." (quoting *Hayes v. Brown*, 399 F.3d 972, 984 (9th Cir. 2005)).  Day offered no relevant testimony regarding the counts for resisting a peace officer and his testimony was not necessary to prove Crane's guilt on the remaining count.  Officer McDonald caught Crane red-handed with the stolen property stashed in his storage unit and on his person.  McDonald's testimony combined with the rest of the evidence sufficiently established that Crane was in possession of stolen property.  Under these circumstances, there was no reasonable likelihood that Day's alleged false testimony affected the jury's verdict, and thus no constitutional violation.

## VI.  CONCLUSION

For the foregoing reasons, the petition should be denied.  Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Cases, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  A certificate of appealability may issue only "if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  For the reasons discussed, a substantial showing of the denial of

a constitutional right has not been made in this case.

Accordingly, IT IS HEREBY RECOMMENDED that:

1.  The petition for writ of habeas corpus be denied; and

2.  A certificate of appealability not issue.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time waives the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).  Any reply to the objections shall be filed and served within seven days after service of the objections.

DATED: December 7, 2011

CHARLENE H. SORRENTINO
UNITED STATES MAGISTRATE JUDGE

9